FILED
88 NOV 16 PM 3:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

SHIRLEY N. RICHARDSON, )
)
   Plaintiff, )
)
vs. ) CASE NO. CV-00-H-2629-W
)
DILLARDS, INC. and ) JURY DEMAND
CLINIQUE COSMETICS CO., )
)
   Defendants. )

**FIRST AMENDED COMPLAINT**

**I.**    **JURISDICTION.**

    1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Sections 2201 and 2202, and Section 2000e et seq. This is a suit in equity authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq. The Civil Rights Act of 1991 and 42 U.S.C. § 1981 and § 1981a. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. Section 2000e et seq. providing for injunctive relief, back pay, compensatory damages, punitive damages, attorney fees, and other relief against race discrimination, pregnancy discrimination and retaliation.

    2.    Richardson has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964", as amended, 42 U.S.C. Section 2000e et seq. Richardson timely filed her charge of

pregnancy discrimination within 180 days of occurrence of the last discriminatory act. Plaintiff timely filed her pregnancy discrimination complaint within 90 days of the receipt of her respective Notice of Right To Sue from the Equal Employment Opportunity Commission ("EEOC").

## II.   PARTIES.

3.   The plaintiff, Shirley N. Richardson, is a female citizen of the United States and a resident of the State of Alabama.

4.   The defendant, Dillards Inc. (sometimes hereinafter "Dillards"), is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. Section 2000e et seq. Dillards employs at least fifteen (15) persons.

5.   The defendant, Clinique Cosmetics Company (sometimes hereinafter referred to as "Clinique"), is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. Section 2000e et seq. Clinique employs at least fifteen (15) persons.

## III.   FACTS.

6.   On August 10, 1998, the plaintiff began selling Clinique Cosmetics at Hecht's Department store located in Wheaton, Maryland. Clinique offers a full range of cosmetics which include skin conditioners, make-up and hair products.

7.   At the Wheaton location, Richardson sold the entire line of Clinique cosmetics.   Richardson was successful in selling the Clinique products.

8.   In approximately January of 1999, Richardson made known her intention

to relocate to Boligee, Alabama.

9.  Richardson spoke with Peggy Gamy, a Clinique Executive Manager, regarding her move to Alabama. Gamy inquired as to where in Alabama Richardson was moving and stated that if Richardson stayed with the company, a position would be found.

10. Shortly thereafter, Gamy informed Richardson that she could continue working selling Clinique at their Dillards location in Tuscaloosa, Alabama.

11. In April of 1999, Richardson resumed selling the Clinique products at Dillards. At the time, Richardson was the only person selling the Clinique Products in Dillards Tuscaloosa location.

12. After starting work at Dillards, Richardson asked about a position as a counter manager. There was no working manager for Clinique at this location. The counter manager position would have been a promotion for Richardson and represented a substantial increase in pay. Richardson asked Dana Ambridge, a Clinique manager and Tchella Jerideaux, a Dillards' cosmetic manager about the Clinique counter manager position.

13. In June of 1999, Richardson learned that she was not selected for the counter manager position.

14. Clinique Manager, Ambridge and Clinique Manager, Bridgett Hearn asked Richardson to train the new manager, as well as another employee who was hired.

15. Richardson was told by Clinique managers that she was going to be the "right hand man" to the new manager. Upon information, and belief the white applicant selected for the counter manager position had no experience with the extensive

3

Clinique product line.

16.     In approximately June of 1999 the plaintiff learned that she was pregnant and informed Dillards Cosmetic Manager, Tchalla Jerideaux.

17.     Also in June of 1999, Kimberly Michaels, a white Dillards employee, made a derogatory racial comment in Richardson's presence concerning African-American's. Michaels made a statement to the effect that white people were in the United States before black persons, and the white persons were more knowledgeable than black persons.

18.     Richardson reported this comment to Jerideaux who responded by advising her to overlook the insult because Michaels was a white employee.

19.     On or about July 3, 1999, Richardson had another incident with Kimberly Michaels, who without authorization, opened Richardson's handbag and removed her wallet. Michaels then announced Richardson's age and date of birth to everyone in the area.  Richardson alerted Tom Gallion, store manager, that she disapproved and opposed Michaels' characterizations of African-Americans and her childish behavior. Gallion stated that he would address these issues.

20.     After Richardson made her complaints known to Gallion, she was called into Jerideaux's office. Jerideaux informed Richardson that she had transferred to Dillards and was the only black working at Clinique's counter.  Jerideaux stated that Richardson should observe the cosmetics area and notice that there were white persons at Estee Lauder, Lancome and Elizabeth Arden. Jerideaux proceeded to ask Richardson, how many black persons she observed working. Jerideaux further cautioned Richardson that as a black pregnant person, she should not file any

4

complaints concerning a white employee.

21. In addition to warning Richardson about opposing Michael's conduct, Jerideaux advised Richardson that she had been late for work, which could result in her dismissal.

22. On or about July 12, 1999, Richardson's doctor informed her that as a result of the pregnancy she needed to be off from work.

23. Richardson informed Dillards' manager, Andy Poole, and advised him that she would be taking time off pursuant to her doctor's instruction. Poole told Richardson to take the time she needed and provide a doctor's excuse upon her return to work.

24. On or about July 16, 1999, Richardson called Poole to update him on her condition and inform him that she would return to work on July 22, 1999. Poole informed Richardson that when she returned to call and get her work schedule and to bring in the doctor's excuse.

25. On or about July 21, 1999, Richardson phoned Jerideaux to obtain her work schedule. Jerideaux related that the system had terminated Richardson's employment.

26. Richardson stated that she would obtain a doctor's excuse to return to work. Jerideaux related that Richardson had no maternity leave available. Jerideaux further related that she, along with Poole and Gallion, thought it was best to dismiss Richardson.

27. Jerideaux also informed Richardson that the company did not have any maternity uniforms for Richardson.

28. Richardson asked about transferring to another department, Poole informed Richardson that other positions would involve standing and customers bothering her which would not be good for her. Further, Poole stated that the termination was already in the computer and that she could return to work once the baby was delivered.

## IV. CAUSES OF ACTION

### A. Count I: Title VII - Discrimination Based Upon Sex and Pregnancy

29. The plaintiff re-avers and incorporates paragraphs 1-28 with the same force and effect as if fully set out in specific detail herein below.

30. On or about July 21, 1999, the defendant Dillards discharged the plaintiff from her employment on the basis of her sex and her pregnancy.

31. The defendant's reason for the plaintiff's termination is pretextual.

32. The defendant Dillards discriminated against the plaintiff on the basis of her sex and her pregnancy with respect to the terms, conditions and privileges of employment in violation of Title VII.

33. Upon information and belief, the defendant Dillards has a policy and custom of discriminating with reference to sex and pregnancy with respect to discipline, discharge and other terms, conditions and privileges of employment.

34. The defendant Dillards engaged in the practices complained of herein with malice and/or with reckless indifference to the plaintiff's federally protected rights.

35. As a result of the defendant Dillards' actions, the plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, wages,

compensation and other benefits and conditions of employment. Additionally, the plaintiff has suffered injury, including humiliation, distress, mental anguish and suffering and loss of enjoyment of life.

**B.     Count II:     42 U.S.C. 1981 and 1981a- Race Discrimination in Promotions**

36.     The plaintiff re-avers and incorporates paragraphs 1-35 with the same force and effect as if fully set out in specific detail herein below.

37.     The defendants Dillards and Clinique engage in a pattern and practice of race discrimination with respect to promotional opportunities.

38.     In spite of the fact that the plaintiff was qualified for the counter manager position, the defendants denied her the opportunity to advance to a manager's position. Rather than selecting her for promotion, Richardson was directed to train the new counter manager.

39.     As a result of the defendants' actions, the plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, wages, compensation and other benefits and conditions of employment. Additionally, the plaintiff has suffered injury, including humiliation, distress, mental anguish and suffering and loss of enjoyment of life.

**C.     Count III:     Race Discrimination in terms and conditions of employment.**

40.     The plaintiff re-avers and incorporates paragraphs 1-39 with the same force and effect as if fully set out in specific detail herein below.

41.     This count is only brought against Dillards, Inc.

42. Richardson was instructed not to report the misconduct of her white co-workers.

43. Richardson's employment was conditioned on her raising legitimate grievances regarding the behavior of her white co-worker.

**D.   Count IV:   Retaliation**

44. The plaintiff re-avers and incorporates paragraphs 1-43 with the same force and effect as if fully set out in specific detail herein below.

45. This count is only brought against Dillards, Inc.

46. Richardson's termination reflects retaliation for her opposing discriminatory conduct.

47. The conduct of the defendants proximately caused the plaintiff to suffer great emotional distress and trauma for which she claims compensatory and punitive damages.

**E.   Count V:   Negligent and/or Wanton and Malicious Training, Supervision and Retention**

48. The plaintiff re-avers and incorporates paragraphs 1-47 with the same force and effect as if fully set out in specific detail herein below.

49. This count is only brought against Dillards, Inc.

50. The defendants maliciously, deliberately, wantonly and/or negligently failed to supervise, monitor and/or train its employees, including, but not limited to Michaels, Gallion, and Jerideaux.

51. The defendants also failed to protect employees, such as the plaintiff, from the illegal treatment described in this complaint.

52.     The conduct of the defendants proximately caused the plaintiff to suffer great emotional distress and trauma for which she claims compensatory and punitive damages.

## VI.    PRAYER FOR RELIEF.

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.     Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendants are violative of the rights of the plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. Section 2000e et seq., 42 U.S.C. Section 1981a.

2.     Grant the plaintiff a permanent injunction enjoining the defendants, their agents, successors, employees, attorneys and those acting in concert with the defendants and at the defendants' request from continuing to violate Title VII.

3.     Enter an Order requiring the defendants to make the plaintiff whole by awarding her reinstatement, lost wages (plus interest), compensatory and punitive damages, loss of benefits including retirement, pension, seniority and other benefits of employment.

4.     The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted,

_____
Lee D. Winston
Attorney for Plaintiff

**OF COUNSEL:**
GORDON, SILBERMAN, WIGGINS & CHILDS, P.C.
1400 SouthTrust Tower
Birmingham, Alabama 35203
(205) 328-0640

### JURY DEMAND

The plaintiff demands a trial by struck jury

_____
Lee Winston